M. Jonathan Hayes (Bar No. 90388)
Matthew D. Resnik (Bar No. 182562)
**RHM LAW LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
jhayes@RHMFirm.com
matt@RHMFirm.com

*Attorneys for Debtor*
Steven Robert Wallace II

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SANTA ANA DIVISION**

| | |
|---|---|
| In re | Case No. 8:25-bk-11509-SC |
| STEVEN ROBERT WALLACE II, | Chapter 11 |
| Debtor and Debtor-in-Possession. | **DEBTOR'S DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION** |
| | Date: -----------------, 2026<br>Time: 1:30 p.m.<br>Place: Courtroom 5C<br>411 W. Fourth Street<br>Santa Ana, CA 92701 |

**RHM LAW LLP**

Contents

I.       5

INTRODUCTION ................................................................................................5

        A.      Purpose of this document .................................................................5

        B.      Deadlines for objecting to the Plan; Date for Plan Confirmation
                Hearing ...........................................................................................6

        C.      Identity of person to contact for more information regarding
                the Plan ...........................................................................................7

        D.      Disclaimer........................................................................................7

        E.      Important notices and cautionary statements ...................................7

II.     DESCRIPTION AND HISTORY OF DEBTOR'S ASSETS; EVENTS
        LEADING TO CHAPTER 11 FILING.........................................................8

        A.      Steve Wallace Overview ..................................................................8

        B.      Background of the Debtor's operations.............................................9

        EPIC Capital Solutions, Inc..........................................................................9

        Black Oak, LLC..........................................................................................10

        Litigation ...................................................................................................11

        C.      The major events or circumstances that led to the filing...............14

        D.      Description of the Debtor's interest in the Utah Property..............14

        E.      Management of Debtor before and after the bankruptcy ...............14

        F.      Significant events during the bankruptcy proceedings .................14

        G.      Postpetition Financial Situation; Procedures Implemented to
                Resolve Financial Problems ...........................................................15

        H.      Claims and Claim Objections.........................................................15

        I.      Actual and Projected Recovery of Preferential or Fraudulent
                Transfers ........................................................................................15

III.    SUMMARY OF THE PLAN OF REORGANIZATION .........................15

        A.      General overview............................................................................15

        B.      Unclassified claims........................................................................16

        1.      Administrative Expenses.....................................................16

**2**
**DISCLOSURE STATEMENT**

*2.*   *Priority Tax Claims* ................................................................. 17

C.   Classified Claims and Interests ................................................................ 17

Summary of Treatment and Payment Amounts ......................................... 17

D.   Claims................................................................................................... 18

**Class 1** – Secured Creditor Rocket Mortgage, LLC dba
Quicken Loans, LLC. ........................................................... 18

**Class 2** – Secured Creditor Rocket Mortgage, LLC dba
Quicken Loans, LLC. ........................................................... 18

**Class 3** – Secured Creditor Hyundai Capital America aka
Genesis Finance. ................................................................. 19

**Class 4 –** Priority Unsecured Claims ........................................... 19

**Class 5 –** Non-Priority General Unsecured Claims ..................... 19

**Class 6** – Interest Holders ....................................................... 20

E.   Means for performing the Plan................................................................ 20

1.   Funding For the Plan ............................................................ 20

F.   Future Plan Projections.......................................................................... 21

G.   Disbursing Agent.................................................................................. 22

H.    Risk factors ......................................................................................... 22

I.    Other provisions of the Plan ................................................................. 22

1.   Executory contracts and unexpired leases.............................. 22

2.   Changes in rates subject to regulatory commission
approval .............................................................................. 23

3.   Retention of jurisdiction....................................................... 23

J.   Tax consequences of the Plan ............................................................... 23

IV.   PLAN CONFIRMATION REQUIREMENTS AND PROCEDURES ................ 24

A.   Who may vote or object to the Plan? ...................................................... 24

B.   Who is not entitled to vote on confirmation of the Plan?........................... 26

C.    Absolute priority rule .......................................................................... 27

D.   Liquidation analysis.............................................................................. 28

E.    Feasibility ......................................................................................... 30

**3**
**DISCLOSURE STATEMENT**

RHM LAW LLP

V.    EFFECT OF CONFIRMATION OF THE PLAN OF
REORGANIZATION ........................................................................................ 30

    A.    Discharge ................................................................................................ 30

    B.    Revesting of property in the Debtor ....................................................... 31

    C.    Postconfirmation employment of professionals ...................................... 31

    D.    Modification of the Plan .......................................................................... 31

    E.    Postconfirmation status report ................................................................ 31

    F.    U.S. Trustee quarterly fees ..................................................................... 32

    G.    Default; creditor action restrained .......................................................... 32

    H.    Postconfirmation conversion or dismissal ............................................... 33

    I.    Final decree ............................................................................................. 33

**RHM LAW LLP**

**4**

**DISCLOSURE STATEMENT**

## I.

## INTRODUCTION

Steven Robert Wallace II, the Debtor and Debtor-in-Possession, filed his chapter 11 petition on June 2, 2025. The Debtor is a single individual, 43 years of age at the time. He recently moved from Utah to Irvine, California. He is a self-employed real estate consultant and engages in real estate and development projects and management thereof. The Debtor and his wholly owned entity EPIC Capital Solutions, Inc. also manages and consults for various projects, third-parties, and other entities.

The Debtor owns two corporate entities: EPIC Capital Solutions, Inc. and Black Oak, LLC. Both entities were formed in Utah. The Debtor owns a number of other corporate type entities that are now defunct or inactive, usually because the specific project(s) have concluded.

The main reason the Debtor filed this case is because he could no longer afford the costs of defending two ongoing litigation matters pending against him, or to prosecute two litigation matters in his favor which he believes have substantial value, which ultimately would have been used to repay his creditors.

The Debtor is the proponent of the Chapter 11 Plan of Reorganization (the "Plan") sent to you in the same envelope as this document.

The Plan provides for payment to holders of allowed claims. The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan.

The Effective Date of the Plan shall be the first business day, which is 14-calendar days after the date of entry of the order confirming the Plan.

### A. Purpose of this document

This Disclosure Statement summarizes what is in the Plan and tells you certain information relating to the Plan and the process the Court follows in determining whether

**5**
**DISCLOSURE STATEMENT**

RHM LAW LLP

or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO**

**KNOW ABOUT:**

      **(1)    WHO CAN VOTE OR OBJECT;**

      **(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION;**

      **(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

      **(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN;**

      **(5)    WHAT IS THE EFFECT OF CONFIRMATION;**

      **(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own legal counsel to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement. If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

A Disclosure Statement is required to contain "adequate information" concerning the Plan. The Bankruptcy Court has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan. Any party can now solicit votes for or against the Plan.

**B. Deadlines for objecting to the Plan; Date for Plan Confirmation Hearing**

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. In other words, the terms of the plan are not yet binding

**RHM LAW LLP**

**6**
**DISCLOSURE STATEMENT**

on anyone.  However, if the court later confirms the Plan, then the Plan will be binding on the Debtor and on all creditors and interest holders in this case.

The hearing where the Court will determine whether or not to confirm the Plan will take place on **TBA** in Courtroom 5C, 411 W. Fourth Street, Santa Ana, CA 92701.

Objections to the adequacy of the Disclosure Statement must be filed with the Court and served so that any objections are actually received by counsel for the Debtor by **TBA.**

**C. Identity of person to contact for more information regarding the Plan**

Any interested party desiring further information about the Disclosure Statement or the Plan should contact counsel for the Debtor, M. Jonathan Hayes, RHM LAW LLP, 17609 Ventura Blvd., Suite 314, Encino, CA 91316, telephone: (818) 285-0100, or e-mail at jhayes@RHMFirm.com.

**D. Disclaimer**

The financial data relied upon in formulating the Plan is based on the Debtor's books and records and historical financial statements.  The Debtor represents that the information contained in this Disclosure Statement is true and correct to the best of his knowledge.

The Court has not yet determined whether the Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Plan.

**E. Important notices and cautionary statements**

The liquidation analysis estimates, and other financial information referenced herein, or attached as exhibits hereto, have been developed by Debtor with the assistance of its bankruptcy counsel.

Although bankruptcy counsel assisted in the preparation of this Disclosure Statement, in doing so such counsel relied upon factual information and assumptions regarding financial, business, and accounting data provided by The Debtor and third parties, all of which information has not been audited.  Moreover, although reasonable

**RHM LAW LLP**

**7**
**DISCLOSURE STATEMENT**

efforts have been made to provide accurate information, The Debtor cannot warrant or represent that the information in this Disclosure Statement, including any and all financial information, is without inaccuracy or omission.

No person or entity may rely upon the Plan or this Disclosure Statement, or any of the accompanying exhibits, for any purpose other than to determine whether to vote in favor of or against the Plan.  Nothing contained in such documents constitutes an admission of any fact or liability by any party, and no such information may be deemed evidence of the tax or other legal effects of the Plan on holders of claims or interests in these cases.

## II.    DESCRIPTION AND HISTORY OF DEBTOR'S ASSETS; EVENTS LEADING TO CHAPTER 11 FILING

### A.    Steve Wallace Overview

The Debtor is presently engaged in the same professional income-producing activities that have supported his livelihood for the past twenty years.  These activities consist primarily of consulting and management-fee services related to project management, development management, and hospitality-asset management.  The Debtor also earns income from fee-based and performance-based advisory services in the commercial real estate and business markets, which can also include capital markets advisory, deal structuring, capitalization planning, and project oversight.  In addition, certain clients may from time to time include operating companies that seek strategic guidance for business growth, planning, marketing, or capitalization needs — ranging from established businesses to start-ups seeking assistance with capital strategy and capital markets advisory.

The Debtor receives compensation through a mix of consulting fees, project management and oversight fees, milestone-based development fees, and referral-style commissions permissible within commercial real estate finance.  These activities do not involve owner-occupied residential mortgage products and do not require securities

**DISCLOSURE STATEMENT**

RHM LAW LLP

licensure.  The Debtor also performs strategic advisory work for businesses and start-ups. The Debtor is already engaged in these professional activities and presently has additional assignments in progress or in negotiation.

Income is generated across multiple projects and professional relationships rather than from a single client or revenue source.  Based on the current role mix, the Debtor's primary earnings at this time come from real estate management-related income, supported by advisory and consulting fees, commissions for business growth and revenue generation, and milestone-based compensation in connection with real estate development and commercial finance project achievements. Income can vary from month to month, so prudent planning and savings in anticipation of slower months is expected and necessary.

### B.    Background of the Debtor's operations

The Debtor owns two corporate entities that will be involved in this case: EPIC Capital Solutions, Inc. and Black Oak, LLC.   Both entities were formed in Utah.  The Debtor owns a number of other corporate type entities that are defunct or inactive, usually because the specific project as to each has ended.

### EPIC Capital Solutions, Inc.

The Debtor formed EPIC Capital in 2007 although it is not presently engaged in any activities except as set forth below.  It was formed for purposes of taking consulting fees and commissions for capital markets advisory and commercial debt origination.  Over time, EPIC not only arranged for capital and structured commercial finance deals, but the Debtor also got involved as a consultant taking fees for project management, deal negotiation, oversight, and in some cases assumed ongoing management roles in projects. This entity has functioned as a parent company for other subsidiary entities, related to management of projects and work products related to specific opportunities.  The Debtor has formed other entities over the years with EPIC as the parent for a variety of projects, and has earned out fees in the lifecycle of commitments related to said projects.

RHM LAW LLP

**9**
**DISCLOSURE STATEMENT**

EPIC Capital has no hard assets at this time.  It has no employees.

EPIC Capital owns 100% of ECS Logistics, LLC (MT).  ECS Logistics is currently generating little income and is generally inactive.  It has a Wells Fargo bank account with a balance of a few hundred dollars.

**Black Oak, LLC.**

The Debtor formed Black Oak LLC ("Black Oak") (originally called CCV Partners LLC, then later changed the name to Black Oak be more versatile, hoping to include other potential opportunities).  Black Oak in the past was owned 99% by the Debtor (personally) and 1% by EPIC.  Today it is 100% owned by the Debtor.

Black Oak LLC owns 100% of CCV Management LLC and CCV Holdings LLC (CCV Calimesa is a DBA in CA, but currently inactive in CA).

Black Oak is not currently engaged in any active business activities.  It has no employees.  Its only assets are its interests in CCV Holdings and CCV Management.

• CCV Management was originally formed by parties unrelated to the Debtor for the purpose of developing a 30-acre plot of land in Calimesa Ca.  (the "CCV Project").  In 2013, far prior to the Debtor's involvement, CCV Project borrowed $11 million from an unrelated entity, Country Club Village Partners 1, LLP for that purpose of acquiring and developing the Calimesa parcels.  CCV Management was later acquired by the Debtor through his newly created entity CCV Partners LLC (later named: Black Oak, LLC) in or about March 2017.  The Debtor utilized multiple loans throughout the lifecycle of the CCV Project successfully paying off two previous development loans.

• The third short term development loan was provided in 2019 by a Toronto Based PE Fund, Romspen California Mortgage Limited Partnership ("Romspen"), as a senior secured commercial real estate bridge loan that was personally guaranteed by the Debtor.  The purpose for the loan was to complete the development of the CCV Project

**RHM LAW LLP**

**10**
**DISCLOSURE STATEMENT**

property, and finish the design, entitlement, and tract map application process, and also accomplished grading the site

• Romspen, as a condition of making the loan, required CCV Management to form a special purpose entity CCV Holdings LLC to be the borrower.  The loan was $14 million payable in full the following year (12-month term).  The loan was extended when payment could not be made at maturity.  The Debtor was required to sign forbearance agreements, holding off the threatened foreclosure when the project had difficulties.  The Debtor was dealing with difficulties with the City of Beaumont, and additional delays which were caused in part by Romspen's activities as they injected themselves into the process and took over and installed a consultant (a 3rd party engineering firm called LSA via Frank Haselton).  Eventually Romspen assigned its rights to RIC (CCV) which foreclosed and acquired the CCV Project property based on a $7.5 million credit bid.

• A series of events related to the CCV Project and its related sewer commitments from neighboring City of Beaumont were breached, and this ultimately caused major setbacks and delays for the project.  Romspen took a non-traditional role (for a lender) by stepping into the active day-to-day management, and installing a new lead role in jurisdictional negotiations with Beaumont, demonstrating themselves as the new leader of the CCV Project (with Black Oak's cooperation), thereby assuming a new role as a fiduciary and management entity for the CCV Project prior to foreclosing on the property in 2021.

**Litigation**

**RIC (CCV) v. Wallace**:  Superior Court Riverside County, Case No. CVRI 2300927

RIC (CCV), LLC. v. Wallace sued the Debtor on his guarantee in this matter filed in February 2023.  RIC (CCV), successor to Romspen.  The Debtor cross-complained

against RIC (CCV) and Romspen alleging breach of fiduciary duty, constructive fraud, wrongful foreclosure, and unfair competition.  That action is pending.

The Debtor disputes the debt alleged by Romspen and intends to object to the proof of claim.  RIC (CCV) filed a motion for summary judgment on both its guaranty claim and the cross-complaint which is pending.

The Debtor expects to pursue his cross-claim against RIC (CCV) and Romspen alleging breach of fiduciary duty, constructive fraud, wrongful foreclosure, and unfair competition, once he can find a litigation funding company which will fund the litigation. He has made inquiries but has been unsuccessful to date.

**Country Club Village Partners 1 LP v. Wallace**

In October, 2022, Country Club Village Partners 1 LP filed suit to collect its loan against CCV Management, CCV Holdings, Albert Chang, Xiaolai Ding, and the Debtor solely on the issue of whether he is the alter ego of the CCV entities.  Chang and Ding filed a cross-complaint against the Debtor although that cross-complaint has been dismissed.

**Wallace v. City of Beaumont**

The Debtor and CCV Holdings filed suit against the City of Beaumont arising out of the CCV Project alleging among other things that the City failed to honor an agreement to provide sewer service to the project and reneged on a related "will serve letter," and an important 2002 settlement agreement that was recorded on the property's title.  The settlement agreement provided for future sewer service for the property, as was agreed to by the City of Beaumont, Calimesa City, the affected landowners, LAFCO committee, and a Judge via the 2002 agreement.  The Debtor's claims include claims for promissory estoppel, equitable indemnity, and declaratory relief.

RHM LAW LLP

**12**
**DISCLOSURE STATEMENT**

The Debtor expects to pursue his claim against the City if he can find a litigation funding company which will fund the litigation. He has made inquiries but has been unsuccessful at that to date.

**Family Law Case**

The Debtor and his former wife, Tanica Jo Wallace, married in 2010, began a marital dissolution in 2023. In September 2024, they entered into a Stipulation for Decree of Divorce ("MSA") which provided generally (as relevant to this bankruptcy):

• The Debtor will pay child support of $1,809 per month plus certain other expenses such as health insurance, child care etc. He is current on that obligation.

• The Debtor will pay the auto loan payment on Ms. Wallace's vehicle.

• The Debtor will pay alimony of $1,200 per month.

• Ms. Wallace gets possession of the real property at 1979 Alpine Visa Court, West Jordan UT 84088, valued at $1,370,000 (the "Utha Property").

o The 1st mortgage, Rocket Mortgage is currently 30 days late. The loan will be caught up prior to confirmation of the Plan.

o The 2nd mortgage, also Rocket Mortgage, is current at this time.

o The 3rd is ≈$85k owed to a private party, a law firm, with no monthly payments required at this time.

• Debtor was awarded 50% of the equity of the Utah Property if and when it's ever sold. The Property is not likely to be sold, but there is a chance that is might be sold when his youngest child turns 18 or graduates which is likely to occur in year 2034. Note, there is no equity in the Utah Property at this time.

RHM LAW LLP

**13**
**DISCLOSURE STATEMENT**

**Other Income - Projects**

The Debtor's entity EPIC Capital Solutions, Inc receives a monthly Management Fee of $15,500 for its management role overseeing the Sage Creek Resort project in Moab, UT.   The fee is based on an agreement with the resort.  Other opportunities for income are currently being explored and determined.

**C.     The major events or circumstances that led to the filing.**

As set forth above, the main reason for the filing of this chapter 11 case was to stop RIC (CCV) and the Country Club Partners litigation since the Debtor was unable continue to fund his defense of those actions at this time.  The primary concern with the RIC (CCV) action is the Debtor's cross-complaint which the Debtor believes has substantial value which will be lost if he is required to prosecute the matter now because he cannot afford to pay ongoing legal bills to state court counsel.

**D.     Description of the Debtor's interest in the Utah Property.**

As stated above, The Debtor and his ex-wife own a home in Utah, 50-50 as joint tenants.  Utah is not a community property state.  Based on the Marital Settlement Agreement, his ex-wife has full and exclusive possession however the Debtor will receive a portion of the net proceeds of a sale, if a sale were to take place, assuming that there would be equity in the home at that future time.

**E.     Management of Debtor before and after the bankruptcy**

The Debtor has remained the sole decision maker in this case since the petition date and will continue as such post confirmation of the Plan.

**F.     Significant events during the bankruptcy proceedings**

The Debtor's Application to Employ RHM LAW LLP as General Bankruptcy Counsel was approved by entry of order thereon on July 18, 2025 [Doc 31] authorizing the employment of the firm as of the petition date of June 2, 2025.

**RHM LAW LLP**

**14**
**DISCLOSURE STATEMENT**

The Debtor filed his first Status Report as instructed by the court (Doc. 27) and attended the case management conference on September 17, 2025.  At the case management conference, the court fixed the last day to file proofs of claims for December 1, 2025 (the "Bar Date").  The Debtor mailed notice of the Bar Date to all known creditors on September 18, 2024.  (Doc. 40).

On November 6, 2025, Mercedes-Benz filed a motion for relief from stay.  Tilden Terrace filed its motion for relief from stay to permit the

### G.    Postpetition Financial Situation; Procedures Implemented to Resolve Financial Problems

The Debtor asserts that his financial difficulties arose out of the City of Beaumont litigation which was partially caused by Romspen.  The litigation has been a major detractor from his ability to focus on other projects.  This Plan will put that behind him and he will be able to focus on work and new projects and resume business activities in a highly focused manner.

### H.    Claims and Claim Objections

The Bar Date is December 1, 2025.  Sixteen proofs of claim were filed timely.  A summary of those claims are attached as **Exhibit C.**    The Debtor expects to object to the Romspen proof of claim and the State Water Resources Control Board proof of claim.

### I.    Actual and Projected Recovery of Preferential or Fraudulent Transfers

The Debtor has investigated potential claims under 11 U.S.C. §547 and §548.  At this time, it does not appear that there will be any viable actions for avoidance and recovery of preferential and fraudulent transfers.

### III.   SUMMARY OF THE PLAN OF REORGANIZATION

#### A. General overview

As required by the Bankruptcy Code, the Plan separates claims and interests into

**RHM LAW LLP**

**15**
**DISCLOSURE STATEMENT**

various categories and classes according to the nature and legal rights associated with such claims and interests.

The Plan designates which classes are impaired and which classes are unimpaired. The Plan also describes the treatment each class will receive under the Plan.

The Debtor will ask the Bankruptcy Court to confirm this Plan on any impaired classes if any of these classes do not vote to accept the Plan and if the Plan can otherwise be confirmed.

**B. Unclassified claims**

Certain types of claims are not placed into voting classes; instead, they are unclassified. Holders of unclassified claims are not considered impaired and not entitled to vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are automatically entitled to specific treatment provided for them in the Bankruptcy Code.

The following categories of claims are neither classified nor impaired under the Plan and are not entitled to vote on the Plan:

*1. Administrative Expenses*

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1).

The following is an estimate of the §507(a)(1) administrative claims that will be incurred and unpaid through the Effective Date of the Plan and their treatment under the Plan.

| Name | Amount Owed | Treatment |
|---|---|---|
| RHM LAW LLP (counsel for the Debtor) | $10,000 (estimated) | Will be paid in full upon approval of the court. |
| Clerk's Office Fees | $0 (estimated) | Paid when due. |
| Office of the U.S. Trustee Fees | $250 (estimated) | Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |

**16**

**DISCLOSURE STATEMENT**

## Court Approval of Fees Required

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court.

Fees of the Court Clerk are not subject to Court approval and may be paid in the ordinary course of business when due.

*2.    Priority Tax Claims*

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8).  The Debtor owes approximately $3,200 to the Internal Revenue Service and the Utah State Tax Commission.  The Debtor will pay those in the ordinary course of business.

**C. Classified Claims and Interests**

Summary of Treatment and Payment Amounts

| | |
|---|---|
| Priority Creditors – Taxes, approx. $3,200 | Paid in the ordinary course of business. |
| | |
| Class 1 – Rocket Mortgage, first on Utah Property. | Paid according to the terms of the Promissory Note, monthly payments of $7,450. |
| Class 2 – Rocket Mortgage, second on Utah Property. | Paid according to the terms of the Promissory Note, monthly payments of $2,415. |
| Class 3 – Hyundai, second on Genesis vehicle. | Debtor will abandon the vehicle back to the leasing company. |
| Class 4 – Priority debts other than taxes | Paid in the ordinary course of business. |
| Class 5 – General unsecured creditors | Paid $1,200 per month at the outset over 60 months plus 50% of the net proceeds of the Romspen and Beaumont litigation. |

**RHM LAW LLP**

**17**
**DISCLOSURE STATEMENT**

| Class 6 – Debtor's interests | Debtor retains. |
|---|---|

A list of all creditors of this estate is attached hereto as **Exhibit "C."**

### D.    Claims

**Class 1** – Secured Creditor Rocket Mortgage, LLC dba Quicken Loans, LLC.

Claim/Collateral: Rocket Mortgage holds a lien against the Utah Property.  The amount of the claim on the petition date was $957,452 (per POC #3).

Priority of lien: First

Impaired/Not Impaired: Unimpaired.

Treatment: The Rocket Mortgage claim will be paid in full according to its original terms as follows: Monthly payments $7,450.  The monthly payments shall commence within one month of the effective date of the plan and shall continue each month thereafter pursuant to the terms of the promissory note.

Comments:    No new loan documents will be required, unless required by the lender.  Except as modified herein, all terms of the original loan will remain in effect.  The holder of this claim shall provide the Debtor or its counsel with a statement regarding the current balance due as reasonably requested.

If Debtor fails to comply with this treatment, Rocket Mortgage shall be entitled to exercise its rights under State law and under the terms of the loan documents.

It shall be a material default to fail to maintain property insurance on the Collateral or to fail to make timely payment of property taxes.

**Class 2** – Secured Creditor Rocket Mortgage, LLC dba Quicken Loans, LLC.

Claim/Collateral: Rocket Mortgage holds a lien against the Utah Property.  The amount of the claim on the petition date was $224,761 (per POC #4).

Priority of lien: Second

Impaired/Not Impaired: Unimpaired.

**RHM LAW LLP**

**18**
**DISCLOSURE STATEMENT**

Treatment: The Rocket Mortgage claim shall be paid in full according to its original terms as follows: Monthly payments $2,415.  The monthly payments shall commence within one month of the effective date of the plan and shall continue each month thereafter pursuant to the terms of the promissory note.

Comments:    No new loan documents will be required, unless required by the lender.  Except as modified herein, all terms of the original loan will remain in effect.  The holder of this claim shall provide the Debtor or its counsel with a statement regarding the current balance due as reasonably requested.

If Debtor fails to comply with this treatment, Rocket Mortgage shall be entitled to exercise its rights under State law and under the terms of the loan documents.

It shall be a material default to fail to maintain property insurance on the Collateral or to fail to make timely payment of property taxes.

**Class 3** – Secured Creditor Hyundai Capital America aka Genesis Finance.

Claim/Collateral: Hyundai Capital is the lessor on a 2024 Genesis GV70.  It has filed a proof of claim stating the amount owed on the petition date was $14,951 (per POC #11).

Priority of lien: First

Impaired/Not Impaired: Impaired.

Treatment: The Debtor will abandon this vehicle back to the lessor.  Hyundai's unsecured claim after the vehicle is liquidated shall be included in the class 5 creditors.

**Class 4 –** Priority Unsecured Claims

Claims: Certain priority claims specified in §§507(a)(3), (4), (5), (6), and (7) of the Bankruptcy Code are required to be classified in the Plan.

*The Debtor does not believe that any such claims exist.*

**Class 5 –** Non-Priority General Unsecured Claims

RHM LAW LLP

**19**
**DISCLOSURE STATEMENT**

Claims: General unsecured claims are unsecured claims not entitled to priority under §507(a). The Debtor's unsecured creditors according to the Debtor's schedules and expected proofs of claim total approximately $20,444,000. See **Exhibit "C."**

Impaired/Not Impaired: Impaired.

Treatment: Class 5 will be paid $78,550 as payment in full, beginning at $1,200 per month over five years in quarterly payments beginning on the Effective Date of the Plan. This amount is approximately .375% of the total unsecured claims.

In addition, if the Debtor is able to pursue the claims against the City of Beaumont and Romspen, as discussed above, the Debtor will contribute 50% of the net amount received after payment of the attorney's fees and costs.

Comments:

None

**Class 6** – Interest Holders

Impaired/Not Impaired: Unimpaired

Treatment: The Debtor will retain his ownership interests in his assets.

### E. Means for performing the Plan

1. Funding For the Plan

The Debtor expects to make the payments required for the Plan from his ongoing income for the next five years.

Present Income: Based on current work and active assignments, the Debtor's net monthly income (after ordinary business expenses) currently averages approximately $25,000 per month.

Projected Income: As advisory assignments mature and additional time becomes available for income-producing activity, the Debtor's expected net monthly income within

**RHM LAW LLP**

the next 6–12 months is conservatively estimated at $25,000 per month. These projections are intentionally conservative and do not assume best-case outcomes.

Plan Feasibility: The Debtor has the capacity, the intent, and expects to be able to make all Plan payments based on the projected income ranges. While individual monthly income levels may fluctuate, the Debtor will maintain responsible budgeting, saving, and planning to ensure consistency in Plan performance. The income sources supporting the feasibility of the Plan are long-established activities that have historically generated sustainable earnings for the Debtor and are expected to remain stable and reliable for the duration of the Chapter 11 Plan.

### F. Future Plan Projections

The Debtor's projections of profit and loss, created by the Debtor for the next five years are attached hereto as **Exhibit "A."**

The projections are summarized as follows:

| Year | Gross Income | Net Income | Plan Payments to Class 5 |
|------|-------------|------------|---------------------------|
| 2026 | $283,500 | $18,615 | $14,400 |
| 2027 | $287,550 | $20,253 | $15,000 |
| 2028 | $288,900 | $20,451 | $15,900 |
| 2029 | $288,900 | $18,819 | $16,500 |
| 2030 | $288,900 | $16,287 | $16,750 |

The Gross Income line includes a deduction of 10% for self-employment taxes. There is no deduction for income taxes as the Debtor has significant NOL carryfowards.

The Debtor is in the process of preparing financial statements with his actual financial results for the past two years.  When completed the disclosure statement will be amended to include that information.  See **Exhibit "B."**   The actual results in Exhibit B will not be audited, nor reviewed for accuracy by anyone other than the Debtor, and should

RHM LAW LLP

**21**
**DISCLOSURE STATEMENT**

not be relied upon for anything other than a general comparison of the monthly amounts to the projections.

### G.          Disbursing Agent

The Debtor will act as the Disbursing Agent for the purpose of making the distributions to all classes provided under the Plan.

### H.          Risk factors

As the income is projected largely based on estimates of future business, there is a risk that the income will not result and the Debtor will not be able to make the monthly plan payments.

### I.          Other provisions of the Plan

1. Executory contracts and unexpired leases

*i.   Assumptions*

The Debtor reserves the right to modify the Plan to designate contracts or leases to be assumed at any time prior to the hearing on confirmation of the Plan.

If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, or contend that there are arrearages, you must file and serve your objection to the Plan and set forth the arrearages within the deadline for objecting to the confirmation of the Plan.

*ii.   Rejections*

As stated, the Debtor intends to abandon the 2024 Genesis GV702024 to Hyundai Capital.  If there is a claim after the vehicle is abandoned, the claim will be paid with the Class 5 unsecured creditors.

The Debtor reserves the right to modify the Plan to designate certain contracts or leases for rejection at any time prior to the hearing on confirmation of the Plan.

RHM LAW LLP

**22**
**DISCLOSURE STATEMENT**

The order confirming the Plan shall constitute an order approving the rejection of such leases and contracts. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS 30-DAYS AFTER THE PLAN EFFECTIVE DATE. Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise. Any claim for damages or other claims by parties to such rejected contracts or leases shall be included in the general unsecured class.

2. Changes in rates subject to regulatory commission approval

The Debtor is not subject to governmental regulatory commission approval of its rates.

3. Retention of jurisdiction

The Court will retain jurisdiction over this bankruptcy case until a final decree is entered by the Court. At that time the bankruptcy case will be closed.

**J. Tax consequences of the Plan**

The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor:

The Debtor anticipates that confirmation of the Plan will <u>not</u> have any tax consequences.

The Debtor will stay current with filing deadlines and corresponding payment obligations to all taxing agencies.

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.

RHM LAW LLP

**23**
**DISCLOSURE STATEMENT**

The Debtor cannot and does not represent that the tax consequences contained herein are the only tax consequences of the Plan because the Tax Code embodies many complicated rules that make it difficult to state completely and accurately all the tax implications of any action.

## IV.    PLAN CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims.  The Debtor cannot and does not represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are <u>not</u> the only requirements for confirmation.

### A.    Who may vote or object to the Plan?

*Who may object to confirmation of the Plan?*

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

*Who may vote to accept/reject the Plan?*

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and

RHM LAW LLP

**24**
**DISCLOSURE STATEMENT**

(2) classified in an impaired class.

*What is an allowed claim/interest?*

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

**THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS DECEMBER 1, 2025.**  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.

An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

*What is an impaired claim/interest?*

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that Class 5 is impaired and that holder of the claims in that class is therefore entitled to vote to accept or reject the Plan.

The Proponent believes that Classes 1 and 2 are unimpaired and that the holders of claims in these classes therefore do not have the right to vote to accept or reject the Plan.

**RHM LAW LLP**

**25**
**DISCLOSURE STATEMENT**

Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponents have incorrectly characterized the class.

**B.      Who is <u>not</u> entitled to vote on confirmation of the Plan?**

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to §507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.

Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.

Claims entitled to priority pursuant to §507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes, and they are required to receive certain treatment specified by the Code.

Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.

EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

*Votes necessary to confirm the Plan*

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as is discussed later.

*Votes necessary for a class to accept the Plan*

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually

voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the shareholders of such class that actually voted, voted to accept the Plan.

*Treatment of non-accepting classes*

As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."

The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of §1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11 U.S.C. § 1129(b) and applicable case law.

*Request for confirmation despite non-acceptance by impaired classes*

The Debtor will ask the Court to confirm this Plan by cramdown on any impaired classes if any of these classes do not vote to accept the Plan.

## C.        Absolute priority rule

Section 1129(b) provides that only a Chapter 11 plan of reorganization that is fair and equitable with respect to each class of impaired claims/interests that has not accepted the plan can be confirmed.

A plan is only "fair and equitable" to the impaired unsecured creditor class if the allowed value of the claim(s) will be paid in full, or if the holder of any claim or interest that is junior to the dissenting creditors will not receive or retain any property under the plan on account of such junior claim or interest. This condition is generally referred to as the "Absolute Priority Rule."  A Chapter 11 plan cannot be confirmed by the Bankruptcy

**RHM LAW LLP**

**27**
**DISCLOSURE STATEMENT**

Court if it violates the absolute priority rule.  §1129(b)(2)(B).  That requirement applies only if the *unsecured class,* as a group, votes against confirmation of the Plan.

If the Absolute Priority Rule is not met, the Court may nevertheless confirm a plan if new value is paid into the plan (the "new value exception" or "new value corollary"). Allowing old equity to retain an interest does not violate the Absolute Priority Rule if the former equity holders provide new value to the reorganized debtor, under the "new value corollary" to the Absolute Priority Rule.  *In re Ambanc La Mesa Ltd. P'ship,* 115 F.3d 650 (9th Cir. 1997).

In order to qualify for the exception, a party must contribute capital which is (a) new, (b) substantial, (c) money or money's worth, (d) necessary for reorganization, and (e) reasonably equivalent to the value or interest received.  *In re Bonner Mall P'ship,* 2 F.3d 899, 908 (9th Cir. 1993).  *See also* Case v. Los Angeles Lumber, 308 U.S. 106, 121-22 (1939).

### D.    Liquidation analysis

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis.  Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.  Administrative claims are paid next.  Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights to priority.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claim in relationship to the amount of total allowed unsecured claims.  Finally, interest holders

**RHM LAW LLP**

**28**
**DISCLOSURE STATEMENT**

receive the balance that remains after all creditors are paid, if any.

In a Chapter 7 case, a trustee is appointed and entitled to compensation from the bankruptcy estate in an amount not to exceed 25% on the first $5,000 of all moneys disbursed, 10% on any amount over $5,000 but less than $50,000, 5% on any amount over $50,000 but not in excess of $1 million, and 3% on all amounts over $1 million.

For the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a Chapter 7 liquidation.

The assets of the Debtor as of November 1, 2025 are as follows:

| Notes | | |
|---|---|---|
| | Cash in Bank | $10,000 |
| | 2016 Ram 1500 truck | $12,000 |
| | 2024 Mercedes GLC 300 lease | -0- |
| 1. | Utah Property (50% interest) – 1979 W. Alpine Vista Court, West Jordan, UT 84088.  Value on the right is 100% - Debtor part contingent interest.  (see notes below) | $1,074,000 |
| | Household goods and furnishing, FMV $4,000 - exempt | -0- |
| | EPIC Capital Solutions – owns 100% | -0- |
| | Black Oak, LLC – owns 100% | -0- |
| | Pure Adamantium Trust (Debtor is trustee only – owns no interest) | -0- |
| | Insurance Policies – no cash surrender value | -0- |
| 2 | Claims against Romspen and City of Beaumont – large contingent value | -0- |
| | Total | $1,096,000 |
| | Less:  Secured debt Rocket Mortgage | $1,242,000 |

**29**
**DISCLOSURE STATEMENT**

RHM LAW LLP

| | |
|---|---|
| Less: Admin fees and costs – ch 7 (est) | $  50,000 |
| Less: Admin Fees and costs – ch 11 (est) | $  50,000 |
| Total available for unsecured creditors | -0- |

Notes:

1. Utah Property: the FMV is per Zillow.  Title to the property is in the name of T.J. Wallace Revocable Trust.  Under the terms of the trust and the Family Law Settlement with the Debtor's ex-wife, Debtor will receive 50% of the equity (subject to certain other calculations) when the property is sold which must take place no later than 2034.

2. Claims against Romspen and the City of Beaumont:  As noted above, this is complex litigation that will be vigorously defended.  The Debtor to date has been unable to find an attorney to take it on a contingency.  He has been looking for a litigation lender to finance the fees and costs and if he can do so, he will proceed with the litigation.  Should he be successful, 50% of the proceeds after payments of the lender or the fees and costs to the general unsecured class.

### E.        Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

### V.        EFFECT OF CONFIRMATION OF THE PLAN OF REORGANIZATION

### A. Discharge

The Plan provides that the Debtor shall be discharged of liability for payment of debts incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. §1141. However, the discharge will not discharge any liability imposed by the Plan.

**RHM LAW LLP**

**30**
**DISCLOSURE STATEMENT**

**B.  Revesting of property in the Debtor**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the property of the estate in the Debtor, if there is any such property.

From and after the Effective Date, the Debtor may operate and may use, acquire, and dispose of property, and compromise and settle any claims or causes of actions without supervision or consent of the Bankruptcy Court and is free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

The Debtor shall have, retain, reserve and be entitled to assert all claims, causes of action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

**C.   Postconfirmation employment of professionals**

After the entry of the order of confirmation of the Plan, Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-Confirmation Professionals") as the Debtor may desire to render services on such terms as the Debtor deems reasonable.  With respect to services rendered by the Post-Confirmation Professionals, Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

**D.  Modification of the Plan**

The Plan may be modified pursuant to 11 U.S.C. §1127.

**E.  Postconfirmation status report**

Pursuant to Local Bankruptcy Rule 3020, within 120-days following the entry of the order confirming the Plan, a reorganized debtor is to file a status report with

**31**
**DISCLOSURE STATEMENT**

RHM LAW LLP

the Court explaining what progress has been made toward consummation of a confirmed plan.

The Debtor shall do so *unless* the Court sets a post confirmation status conference, at which point it will instead file a post confirmation status report (which contains all the information required by Local Bankruptcy Rule 3020) by the deadline set by the Court, or at least 14-days prior to the hearing if no deadline is specified.

### F.  U.S. Trustee quarterly fees

The Reorganized Debtor shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. §1930(a)(6).

### G. Default; creditor action restrained

Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Reorganized Debtor is not in material default under the Plan.

As those claimants whose claims are not agreed upon by the parties (i.e., memorialized in a Plan treatment stipulation), if Reorganized Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 30-days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.

The Debtor is in material default under the Plan if it fails within 60-days of the service of such notice of default to either: (i) to cure the default; or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

If the Debtor is in material default under the Plan, affected creditors may: (i) take any action permitted under bankruptcy or non-bankruptcy law to enforce the terms of the Plan; (ii) seek liquidation of nonexempt assets pursuant to §1191(c)(3)(B); (iii) seek to remove the Debtor as a DIP; and/or (iv) move to dismiss this case or to convert this case to Chapter 7 pursuant to §1112(b).

**H. Postconfirmation conversion or dismissal**

If this case is converted to Chapter 7 after confirmation of the Plan, the property of the Reorganized Debtor, or of any other successor to the estate under the Plan, that has not been distributed under the Plan will be vested in the Chapter 7 estate, except for property that would have been excluded from the estate if the case had always been one under Chapter 7.

**I.   Final decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this case.

Dated: November 25, 2025        By: _____
                                    Steven Robert Wallace
                                    Debtor and Plan Proponent

Dated: November 25, 2025        **RHM LAW LLP**

                                **By:  /s/ M. Jonathan Hayes**
                                **Matthew D. Resnik**
                                **M. Jonathan Hayes**
                                *Attorneys for Debtor/Plan Proponent*
                                The Debtor Robert Wallace

**RHM LAW LLP**

**33**
**DISCLOSURE STATEMENT**

# EXHIBIT "A"

**Steven Robert Wallace   Case No. 8:25-bk-11509-SC**

**Cash Flow Projections**

| Income | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Year 1 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | YEAR 1 | | | | | | | | | | | | |
| Management Fees | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,500 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 187,500 |
| Consulting Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Other Income | 500 | 500 | 500 | 500 | 500 | 500 | 750 | 750 | 750 | 750 | 750 | 750 | 7,500 |
| Self employment taxes (10%) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,600) | (2,650) | (2,650) | (2,650) | (2,650) | (2,650) | (2,650) | (31,500) |
| Income Taxes | | | | | | | | | | | | | |
| **Total Monthly Income (-Taxes)** | **23,400** | **23,400** | **23,400** | **23,400** | **23,400** | **23,400** | **23,850** | **23,850** | **23,850** | **23,850** | **23,850** | **23,850** | **283,500** |

| Expenses | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | YEAR 1 | | | | | | | | | | | | |
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 28,980 |
| Estimated apartment rent (OC fair market rates) | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 3,300 | 39,600 |
| Estimated utilities for apartment - electricity, heat, gas | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| Food - groceries, eating out and housekeeping supplies | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Clothing, laundry, and dry cleaning | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 666 |
| Personal care products and services | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 666 |
| Medical and dental expenses | 50 | 51 | 52 | 53 | 54 | 55 | 56 | 57 | 58 | 59 | 60 | 61 | 666 |
| Life insurance | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 2,987 |
| Vehicle insurance | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7,920 |
| Car payment - Mercedes Benz | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 19,692 |
| Alimony | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Child support | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 21,708 |
| Misc. car repairs and maintenance | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| Emergency expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UST fees | - | - | 250 | - | - | 250 | - | - | 250 | - | - | 250 | 1,000 |
| MOR preparation | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| **Total Monthly Expenses** | **21,974** | **21,977** | **22,230** | **21,983** | **21,986** | **22,239** | **21,992** | **21,995** | **22,248** | **22,001** | **22,004** | **22,257** | **264,885** |
| | | | | | | | | | | | | | - |
| **Net Income** | **1,426** | **1,423** | **1,170** | **1,417** | **1,414** | **1,161** | **1,858** | **1,855** | **1,602** | **1,849** | **1,846** | **1,593** | **18,615** |
| Payment to unsecured creditors | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Net after plan payment | 226 | 223 | (30) | 217 | 214 | (39) | 658 | 655 | 402 | 649 | 646 | 393 | 4,215 |
| cumulative | 226 | 449 | 419 | 636 | 851 | 812 | 1,470 | 2,125 | 2,527 | 3,176 | 3,822 | 4,215 | |
| Net after plan per Year (cumulative in period) | YEAR 1 | | | | | | | | | | | | 4,215 |

**Steven Robert Wallace   Case No. 8:25-bk-11509-SC**

**Cash Flow Projections**

| Income | YEAR 2 | | | | | | | | | | | | Year 2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
| Management Fees | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 189,000 |
| Consulting Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Other Income | 750 | 750 | 750 | 750 | 750 | 750 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 10,500 |
| Self employment taxes (10%) | (2,650) | (2,650) | (2,650) | (2,650) | (2,650) | (2,650) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (31,950) |
| Income Taxes | | | | | | | | | | | | | |
| **Total Monthly Income (-Taxes)** | **23,850** | **23,850** | **23,850** | **23,850** | **23,850** | **23,850** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **287,550** |

| Expenses | YEAR 2 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 28,980 |
| Estimated apartment rent (OC fair market rates) | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 40,800 |
| Estimated utilities for apartment - electricity, heat, gas | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 315 | 3,780 |
| Food - groceries, eating out and housekeeping supplies | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Clothing, laundry, and dry cleaning | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 810 |
| Personal care products and services | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 810 |
| Medical and dental expenses | 62 | 63 | 64 | 65 | 66 | 67 | 68 | 69 | 70 | 71 | 72 | 73 | 810 |
| Life insurance | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 2,987 |
| Vehicle insurance | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7,920 |
| Car payment - Mercedes Benz | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 19,692 |
| Alimony | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Child support | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 21,708 |
| Misc. car repairs and maintenance | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| Emergency expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UST fees | - | - | 250 | - | - | 250 | - | - | 250 | - | - | 250 | 1,000 |
| MOR preparation | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| **Total Monthly Expenses** | **22,175** | **22,178** | **22,431** | **22,184** | **22,187** | **22,440** | **22,193** | **22,196** | **22,449** | **22,202** | **22,205** | **22,458** | **267,297** |
| | | | | | | | | | | | | | - |
| **Net Income** | **1,675** | **1,672** | **1,419** | **1,666** | **1,663** | **1,410** | **1,882** | **1,879** | **1,626** | **1,873** | **1,870** | **1,617** | **20,253** |
| Payment to unsecured creditors | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 15,000 |
| Net after plan payment | 425 | 422 | 169 | 416 | 413 | 160 | 632 | 629 | 376 | 623 | 620 | 367 | 5,253 |
| cumulative | 4,640 | 5,063 | 5,232 | 5,648 | 6,061 | 6,221 | 6,853 | 7,482 | 7,858 | 8,481 | 9,102 | 9,469 | |
| Net after plan per Year (cumulative in period) | YEAR 2 | | | | | | | | | | | | 5,253 |

Steven Robert Wallace   Case No. 8:25-bk-11509-SC

**Cash Flow Projections**

| Income | YEAR 3 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Year 3 Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Management Fees | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 189,000 |
| Consulting Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Other Income | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Self employment taxes (10%) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (32,100) |
| Income Taxes | | | | | | | | | | | | | |
| **Total Monthly Income (-Taxes)** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **288,900** |
| **Expenses** | YEAR 3 | | | | | | | | | | | | |
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 28,980 |
| Estimated apartment rent (OC fair market rates) | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 42,000 |
| Estimated utilities for apartment - electricity, heat, gas | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 3,900 |
| Food - groceries, eating out and housekeeping supplies | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Clothing, laundry, and dry cleaning | 74 | 75 | 76 | 77 | 78 | 79 | 80 | 81 | 82 | 83 | 84 | 85 | 954 |
| Personal care products and services | 74 | 75 | 76 | 77 | 78 | 79 | 80 | 81 | 82 | 83 | 84 | 85 | 954 |
| Medical and dental expenses | 74 | 75 | 76 | 77 | 78 | 79 | 80 | 81 | 82 | 83 | 84 | 85 | 954 |
| Life insurance | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 2,987 |
| Vehicle insurance | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7,920 |
| Car payment - Mercedes Benz | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 19,692 |
| Alimony | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Child support | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 21,708 |
| Misc. car repairs and maintenance | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| Emergency expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UST fees | - | - | 250 | - | - | 250 | - | - | 250 | - | - | 250 | 1,000 |
| MOR preparation | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| **Total Monthly Expenses** | **22,271** | **22,274** | **22,527** | **22,280** | **22,283** | **22,536** | **22,289** | **22,292** | **22,545** | **22,298** | **22,301** | **22,554** | **268,449** |
| | | | | | | | | | | | | | - |
| **Net Income** | **1,804** | **1,801** | **1,548** | **1,795** | **1,792** | **1,539** | **1,786** | **1,783** | **1,530** | **1,777** | **1,774** | **1,521** | **20,451** |
| Payment to unsecured creditors | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 1,325 | 15,900 |
| Net after plan payment | 479 | 476 | 223 | 470 | 467 | 214 | 461 | 458 | 205 | 452 | 449 | 196 | 4,551 |
| cumulative | 9,948 | 10,424 | 10,647 | 11,117 | 11,584 | 11,798 | 12,259 | 12,718 | 12,923 | 13,375 | 13,824 | 14,020 | |
| Net after plan per Year (cumulative in period) | YEAR 3 | | | | | | | | | | | | 4,551 |

**Steven Robert Wallace Case No. 8:25-bk-11509-SC**

**Cash Flow Projections**

| Income | YEAR 4 | | | | | | | | | | | | Year 4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
| Management Fees | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 189,000 |
| Consulting Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Other Income | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Self employment taxes (10%) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (32,100) |
| Income Taxes | | | | | | | | | | | | | |
| **Total Monthly Income (-Taxes)** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **288,900** |

| Expenses | YEAR 4 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 28,980 |
| Estimated apartment rent (OC fair market rates) | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 | 43,200 |
| Estimated utilities for apartment - electricity, heat, gas | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 325 | 3,900 |
| Food - groceries, eating out and housekeeping supplies | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Clothing, laundry, and dry cleaning | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 1,098 |
| Personal care products and services | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 1,098 |
| Medical and dental expenses | 86 | 87 | 88 | 89 | 90 | 91 | 92 | 93 | 94 | 95 | 96 | 97 | 1,098 |
| Life insurance | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 2,987 |
| Vehicle insurance | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7,920 |
| Car payment - Mercedes Benz | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 19,692 |
| Alimony | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Child support | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 21,708 |
| Misc. car repairs and maintenance | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| Emergency expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UST fees | - | - | 250 | - | - | 250 | - | - | 250 | - | - | 250 | 1,000 |
| MOR preparation | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| **Total Monthly Expenses** | **22,407** | **22,410** | **22,663** | **22,416** | **22,419** | **22,672** | **22,425** | **22,428** | **22,681** | **22,434** | **22,437** | **22,690** | **270,081** |
| | | | | | | | | | | | | | - |
| **Net Income** | **1,668** | **1,665** | **1,412** | **1,659** | **1,656** | **1,403** | **1,650** | **1,647** | **1,394** | **1,641** | **1,638** | **1,385** | **18,819** |
| Payment to unsecured creditors | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 1,375 | 16,500 |
| Net after plan payment | 293 | 290 | 37 | 284 | 281 | 28 | 275 | 272 | 19 | 266 | 263 | 10 | 2,319 |
| | | | | | | | | | | | | | |
| cumulative | 14,313 | 14,603 | 14,640 | 14,924 | 15,206 | 15,234 | 15,509 | 15,781 | 15,800 | 16,066 | 16,329 | 16,339 | |
| Net after plan per Year (cumulative in period) | YEAR 4 | | | | | | | | | | | | 2,319 |

Steven Robert Wallace    Case No. 8:25-bk-11509-SC

**Cash Flow Projections**

| Income | YEAR 5 | | | | | | | | | | | | Year 5 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | Total |
| Management Fees | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 15,750 | 189,000 |
| Consulting Fees | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 120,000 |
| Other Income | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Self employment taxes (10%) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (2,675) | (32,100) |
| Income Taxes | | | | | | | | | | | | | |
| **Total Monthly Income (-Taxes)** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **24,075** | **288,900** |

| Expenses | YEAR 5 | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 7,450 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 2,415 | 28,980 |
| Estimated apartment rent (OC fair market rates) | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 45,000 |
| Estimated utilities for apartment - electricity, heat, gas | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 4,200 |
| Food - groceries, eating out and housekeeping supplies | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Clothing, laundry, and dry cleaning | 98 | 99 | 100 | 101 | 102 | 103 | 104 | 105 | 106 | 107 | 108 | 109 | 1,242 |
| Personal care products and services | 98 | 99 | 100 | 101 | 102 | 103 | 104 | 105 | 106 | 107 | 108 | 109 | 1,242 |
| Medical and dental expenses | 98 | 99 | 100 | 101 | 102 | 103 | 104 | 105 | 106 | 107 | 108 | 109 | 1,242 |
| Life insurance | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 249 | 2,987 |
| Vehicle insurance | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 660 | 7,920 |
| Car payment - Mercedes Benz | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 720 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 1,641 | 19,692 |
| Alimony | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 1,200 | 14,400 |
| Child support | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 1,809 | 21,708 |
| Misc. car repairs and maintenance | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 80 | 960 |
| Emergency expenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,000 |
| UST fees | - | - | 250 | - | - | 250 | - | - | 250 | - | - | 250 | 1,000 |
| MOR preparation | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 3,600 |
| **Total Monthly Expenses** | **22,618** | **22,621** | **22,874** | **22,627** | **22,630** | **22,883** | **22,636** | **22,639** | **22,892** | **22,645** | **22,648** | **22,901** | **272,613** |
| | | | | | | | | | | | | | - |
| **Net Income** | **1,457** | **1,454** | **1,201** | **1,448** | **1,445** | **1,192** | **1,439** | **1,436** | **1,183** | **1,430** | **1,427** | **1,174** | **16,287** |
| Payment to unsecured creditors | 1,375 | 1,375 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 1,400 | 16,750 |
| Net after plan payment | 82 | 79 | (199) | 48 | 45 | (208) | 39 | 36 | (217) | 30 | 27 | (226) | (463) |
| | | | | | | | | | | | | | |
| cumulative | 16,421 | 16,501 | 16,302 | 16,350 | 16,395 | 16,187 | 16,226 | 16,262 | 16,045 | 16,075 | 16,102 | 15,877 | |
| Net after plan per Year (cumulative in period) | YEAR 5 | | | | | | | | | | | (463) | |

**Steven Robert Wallace Case No. 8:25-bk-11509-SC**

**Cash Flow Projections**

| Income | | 0 | 14 | 28 | 42 | 56 |
|---|---|---|---|---|---|---|
| | | **Total Year 1** | **Total Year 2** | **Total Year 3** | **Total Year 4** | **Total Year 5** |
| Management Fees | | 187,500 | 189,000 | 189,000 | 189,000 | 189,000 |
| Consulting Fees | | 120,000 | 120,000 | 120,000 | 120,000 | 120,000 |
| Other Income | | 7,500 | 10,500 | 12,000 | 12,000 | 12,000 |
| Self employment taxes (10%) | | (31,500) | (31,950) | (32,100) | (32,100) | (32,100) |
| Income Taxes | | | | | | |
| **Total Monthly Income (-Taxes)** | | **283,500** | **287,550** | **288,900** | **288,900** | **288,900** |

| Expenses | | | | | | |
|---|---|---|---|---|---|---|
| 1st Mortgage - 1979 W Alpine (per Decree of Divorce) | | 89,400 | 89,400 | 89,400 | 89,400 | 89,400 |
| 2nd Mortgage - 1979 W Alpine (per Decree of Divorce) | | 28,980 | 28,980 | 28,980 | 28,980 | 28,980 |
| Estimated apartment rent (OC fair market rates) | | 39,600 | 40,800 | 42,000 | 43,200 | 45,000 |
| Estimated utilities for apartment - electricity, heat, gas | | 3,600 | 3,780 | 3,900 | 3,900 | 4,200 |
| Food - groceries, eating out and housekeeping supplies | | 14,400 | 15,000 | 14,400 | 14,400 | 14,400 |
| Clothing, laundry, and dry cleaning | | 666 | 810 | 954 | 1,098 | 1,242 |
| Personal care products and services | | 666 | 810 | 954 | 1,098 | 1,242 |
| Medical and dental expenses | | 666 | 810 | 954 | 1,098 | 1,242 |
| Life insurance | | 2,987 | 2,987 | 2,987 | 2,987 | 2,987 |
| Vehicle insurance | | 7,920 | 7,920 | 7,920 | 7,920 | 7,920 |
| Car payment - Mercedes Benz | | 8,640 | 8,640 | 8,640 | 8,640 | 8,640 |
| Ex-wife's car payment (per Decree of Divorce) | | 19,692 | 19,692 | 19,692 | 19,692 | 19,692 |
| Alimony | | 14,400 | 14,400 | 14,400 | 14,400 | 14,400 |
| Child support | | 21,708 | 21,708 | 21,708 | 21,708 | 21,708 |
| Misc. car repairs and maintenance | | 960 | 960 | 960 | 960 | 960 |
| Emergency expenses | | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| UST fees | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| MOR preparation | | 3,600 | 3,600 | 3,600 | 3,600 | 3,600 |
| **Total Monthly Expenses** | | **264,885** | **267,297** | **268,449** | **270,081** | **272,613** |

| | | | | | | |
|---|---|---|---|---|---|---|
| **Net Income** | | **18,615** | **20,253** | **20,451** | **18,819** | **16,287** |
| Payment to unsecured creditors | | 14,400 | 15,000 | 15,900 | 16,500 | 16,750 |
| Net after plan payment | | 4,215 | 5,253 | 4,551 | 2,319 | (463) |

cumulative

| Net after plan per Year (cumulative in period) | | Total Year 1 | Total Year 2 | Total Year 3 | Total Year 4 | Total Year 5 |
|---|---|---|---|---|---|---|

# EXHIBIT "B"

**EXHIBIT B**

Historical Financial Information

The Debtor is in the process of preparing the historical financial information.  It will be included in an anticipated amendment to this disclosure statement after the Bar Rate has elapsed.

# EXHIBIT "C"

| Creditor | Scheduled Amount | CUD | Filed Claim | Filed Claim Amount | Allowed Amount: Priority | Allowed Amount: Secured | Allowed Amount: Unsecured | Comments |
|---|---|---|---|---|---|---|---|---|
| **Secured** | | | | | | | | |
| Corporate Counsel LLC | 60,000 | | | | | 60,000 | | |
| Rocket Mortgage | 950,721 | | 3 | 957,452 | | 957,452 | | |
| Rocket Mortgage | 222,000 | | 4 | 224,761 | | 224,761 | | |
| Hyundai Lease | | | 11 | 14,951 | | 14,951 | | |
| | | | | | | | | |
| | | | | | | | | |
| Total Secured | 1,232,721 | | | | | | | |
| **Priority** | | | | | | | | |
| Franchise Tax Board | 0 | | 13 | 0 | | | | |
| Internal Revenue Service | 0 | | 2 | 2,719 | 2,719 | | | |
| Tanica Jo Wallace | 0 | | | | | | | |
| Utah State Tax Commission | 0 | | 16 | 462 | 462 | | | |
| | | | | | | | | |
| | | | | | | | | |
| Total Priority | 0 | | | | | | | |
| **Unsecured** | | | | | | | | |
| American First Cr Union | 8,362 | | 14 | 11,056 | | | 11,056 | |
| American First Cr Union | 2,040 | | | | | | 2,040 | |
| Apex Consumer Law | 0 | | | | | | | re Hyundai Motor - notice only |
| Blackstone Capital LLC | 0 | CUD | | | | | | |
| Calif State Water Resources | | U | 15 | 8,910 | | | 8,910 | State Water Resources Control Bd |
| Citibank | 212 | | | | | | 212 | |
| City of Calimesa | | | | | | | | Amt unknown |
| Coleman Frost LLP | 200,000 | U | | | | | | |
| Costco Citi Card | 4,204 | | | | | | 4,204 | |
| Country Club Village Partners | 0 | UD | | | | | | |
| Felix Woo, Esq. | 0 | | | | | | | Notice only |
| FirstMark (Citizens one) | 36,000 | U | | | | | | |
| FUSCOE | | U | | | | | | Amt unknown |
| Gensler | | U | | | | | | Amt unknown |
| IHC | 250 | | | | | | 250 | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Jpmcb | 1,360 | | 9 | 632 | | | 632 | |
| Jpmcb | 735 | | 6 | 735 | | | 735 | |
| Jpmcb | 4,391 | | 8 | 19,959 | | | 19,959 | |
| Kent Milligan | | | | | | | | Amt unknown |
| Keybank | 24,500 | | 7 | 25,009 | | | 25,009 | |
| Keybank | 16,619 | | 12 | 16,619 | | | 16,619 | |
| Kimball Anderson | | | | | | | | Amt unknown |
| Lender Wholesale | 8,000,000 | CU | | | | | | Person guarantee |
| Michael Baker Intl | | | | | | | | Amt unknown |
| ORR Builders | | | | | | | | Amt unknown |
| Park Brighton Resort | 250 | D | | | | | | |
| Ready Capital | 15,700,000 | CU | | | | | | |
| RIC (CVV), LLC | 20,000,000 | CUD | 10 | 20,321,329 | | | 20,321,329 | |
| South Valley ENT | 136 | | | | | | | |
| SBA | 250,000 | CU | | | | | | |
| Venmo | 500 | D | | | | | | |
| Citizens Bank | | | 1 | 32,640 | | | 32,640 | |
| Affirm | | | 5 | 1,329 | | | 1,329 | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Total Unsecured | 44,249,559 | | 20,438,218 | 0 | 0 | 20,444,924 | |
| **TOTAL** | | | | | | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): DEBTOR'S DISCLOSURE STATEMENT
DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/25/2025_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) __11/25/2025_____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Debtor via email- not listed for privacy reasons

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/25/2025 | Gabriela Hansen | /s/ Gabriela Hansen |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

1.   **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [CONTINUED]**:

- Counsel for Debtor: **M. Jonathan Hayes**    jhayes@rhmfirm.com, roksana@rhmfirm.com; matt@rhmfirm.com; rosario@rhmfirm.com; sloan@rhmfirm.com; priscilla@rhmfirm.com; rebeca@rhmfirm.com; david@rhmfirm.com; susie@rhmfirm.com; max@rhmfirm.com; russ@rhmfirm.com
- **Wendy A Locke**    ecfcacb@aldridgepite.com, wlocke@ecf.inforuptcy.com
- Counsel for Rompsen California Mortgage Limited Partnership and RIC (CCV) LLC: **Hal M Mersel** Mark.Mersel@bclplaw.com, mark-mersel-2098@ecf.pacerpro.com
- Counsel for U.S. Trustee: **Kristin T Mihelic**    kristin.t.mihelic@usdoj.gov
- **Diana Torres-Brito**    dtorres-brito@pralc.com, ecfcca@ecf.courtdrive.com
- **Edward A Treder**    cdcaecf@bdfgroup.com
- **United States Trustee (SA**)    ustpregion16.sa.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bclplaw.com, raul.morales@bclplaw.com, REC_KM_ECF_SMO@bclplaw.com, sharon-weiss-7104@ecf.pacerpro.com